UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENATA PETERSON,

    Plaintiff,                      CIVIL ACTION NO. 15-cv-13980

    v.                            DISTRICT JUDGE LINDA V. PARKER

OUTBACK STEAKHOUSE, INC.     MAGISTRATE JUDGE MONA K. MAJZOUB
and BLOOMIN' BRANDS, INC.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR QUALIFIED PROTECTIVE ORDER AND AUTHORIZATION PURSUANT TO HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA) [9]**

Before the Court is Defendants Outback Steakhouse, Inc. and Bloomin' Brands, Inc.'s Motion for Qualified Protective Order and Authorization Pursuant to Health Insurance Portability and Accountability Act (HIPAA). (Docket no. 9.) Plaintiff Renata Peterson filed a Response to the Motion (docket no. 13), and Defendants replied to Plaintiff's Response (docket no. 14). The Motion has been referred to the undersigned for consideration. (Docket no. 11.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).[1] The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

---

[1] Plaintiff requested oral argument on the basis that the arguments raised in her response brief have never been addressed in any published or unpublished opinion relating to a non-medical malpractice, personal injury claim. (Docket no. 13 at 1.) The basis for Plaintiff's request is incorrect, as District Judge David M. Lawson addressed many of Plaintiff's arguments in *Thomas v. 1156729 Ontario, Inc.*, 979 F. Supp. 2d 780 (E.D. Mich. 2013), some of which are virtually identical in substance and as written in Plaintiff's response brief. Plaintiff's request is therefore denied.

**I.    BACKGROUND**

Plaintiff Renata Peterson filed her Complaint in the Macomb County Circuit Court on October 8, 2015, alleging injuries caused by a slip and fall as a result of accumulated grease next to an oil pit in Defendants' parking lot in Shelby Township, Michigan. (Docket no. 1-2 ¶¶ 5-7.) Defendants removed the matter to this court on November 12, 2015. (Docket no. 1.) In her Complaint, Plaintiff alleges that because of the fall, she suffered injuries to her right hip, right knee, and left index finger, aggravation of a pre-existing condition, and mental infirmities, among other things. (*Id*. ¶ 12.) Plaintiff's Complaint asserts a negligence claim against Defendants. (*See id*.)

On February 3, 2016, Defendants' counsel sent Plaintiff's counsel a letter requesting Plaintiff's approval of a proposed qualified protective order under HIPAA with regard to Plaintiff's medical records. (Docket no. 9 at 3; docket no. 9-3.) The proposed order would require Plaintiff's health care providers to provide copies of Plaintiff's medical records to Defendants and allow, but not require, them to discuss Plaintiff's medical conditions with Defendants' counsel. (Docket no. 9-4 ¶¶ 2-4.) The same day, Plaintiff's counsel advised Defendants' counsel that Plaintiff would not stipulate to the proposed order. (Docket no. 9-5.) Plaintiff's counsel further advised that Plaintiff would sign an authorization for the release of her medical records but would not agree to the questioning of her health care providers outside of a deposition. (*Id*.) Defendants then filed the instant Motion on February 5, 2016. (Docket no. 9.)

**II.    GOVERNING LAW**

Rule 26(c) allows the court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that the disclosure or discovery not be had or that the disclosure or discovery be

limited to certain matters. Fed. R. Civ. P. 26(c). The party seeking a protective order has the burden of showing that good cause exists for the order. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). To show good cause, the movant must articulate specific facts showing "clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id*. (citations and internal quotation marks omitted).

### III. ANALYSIS

In their Motion, Defendants assert a need to evaluate the cause, nature, and extent of Plaintiff's alleged injuries. (Docket no. 9 at 2.) Defendants claim that to do this effectively, they will need to obtain Plaintiff's medical records from Plaintiff's health care providers as well as an interpretation and analysis of those records and Plaintiff's treatment through *ex parte* written and/or oral communications with those providers. (*Id*.) By seeking a qualified protective order before seeking this information, Defendants assert that they are complying with the HIPAA guidelines that protect Plaintiff's medical information. (*Id*. at 16.) Defendants argue that their proposed qualified protective order, which orders disclosure of Plaintiff's medical records and permits *ex parte* communications, is appropriate as contemplated by HIPAA, supported by Michigan Law, and/or regularly allowed by Federal Courts, and that in many of these cases, the courts have approved qualified protective orders identical (or substantially similar) to the order proposed by Defendants. (Docket no. 9 at 3-7 (citing 45 C.F.R. § 164.512; *Domako v. Rowe*, 475 N.W.2d 30 (Mich. 1991); *Holman v. Rasak*, 785 N.W.2d 98 (Mich. 2010); *Szpak v. Inyang,* 803 N.W.2d 904 (Mich. Ct. App. 2010); *Palazzolo v. Mann,* No. 09-cv-10043 (E.D. Mich. 2009); *Christian v. Mallett*, No. 11-cv-12316 (E.D. Mich. 2011)) (additional citations omitted)); docket no. 14 at 4-5 (citing *Thomas v. 1156729 Ontario, Inc.,* 979 F. Supp. 2d 780 (E.D. Mich. 2013)).) Defendants also point out that this Court recently approved of and entered an identical

qualified protective order in *Bryant v. Wilson*, No. 15-cv-10207, ECF no. 28 (E.D. Mich. 2015).[2] (Docket no. 14 at 5; docket no. 14-1.)

In response, Plaintiff sets forth several arguments regarding why Defendants' Motion for a qualified protective order should be denied. (Docket no. 13.) First, Plaintiff asserts that Michigan's statutory physician-patient privilege and its waiver provisions, Mich. Comp. Laws § 600.2157, apply to this matter to the extent that they provide Plaintiff greater protection than HIPAA and that MCL § 600.2157 "does not permit secret, private meetings between treating physicians who a patient produces as witnesses in the patient's own behalf, and defense counsel." (*Id*. at 1-2.) Second, Plaintiff argues that Defendants have not established good cause for the issuance of the proposed order in this matter, particularly with regard to the proposed "secret, private meetings" with her treating physicians. (*Id*. at 2-3.) Third, Plaintiff argues that Defendants' Motion is premature because Defendants have not yet sought Plaintiff's medical records to determine whether her injuries warrant "secret, private meetings" with her physicians. (*Id*. at 3.) Finally, Plaintiff argues that Defendants' proposed order is deficient in that it is overbroad, it circumvents Federal Rule of Civil of Procedure 45, it does not sufficiently inform Plaintiff's physicians that they are not required to meet with Defendants' counsel, and it improperly permits both oral and written *ex parte* communications. (*Id*. at 3-5.)

Michigan's physician-patient privilege applies in this diversity action. *See* Fed. R. Evid. 501; *Schuler v. U.S.*, 113 F.R.D. 518, 520-21 (W.D. Mich. 1986). The privilege is defined by statute, which provides that a physician is prohibited from "disclos[ing] any information that [he] has acquired in attending a patient in a professional character, if the information was necessary to enable [him] to prescribe for the patient . . . ." Mich. Comp. Laws § 600.2157. But "[i]f the

---

[2] Indeed, in *Bryant*, the undersigned found that entry of the qualified protective order was appropriate and that it aligned with the requirements of HIPAA and applicable case law. *Bryant*, No. 15-cv-10207, ECF no. 24 at 3.

patient brings an action against any defendant to recover for any personal injuries . . . and the patient produces a physician as a witness in the patient's own behalf who has treated the patient for the injury . . . , the patient shall be considered to have waived the privilege . . . as to another physician who has treated the patient for the injuries . . . ."[3] *Id.* Under Michigan law, once the privilege has been waived, defense counsel may conduct *ex parte* interviews with a plaintiff's treating physicians where the plaintiff brings a personal injury claim and places his physical condition in controversy. *See Domako, supra*, 475 N.W.2d at 36 ("Once the privilege is waived, there are no sound legal or policy grounds for restricting access to the witness.") (medical malpractice action); *Davis v. Dow Corning Corp.*, 530 N.W.2d 178, 180-81 (Mich. Ct. App. 1995) (products liability action); *Belote v. Strange*, No. 262591, 2005 WL 2758007, at *4 (Mich. Ct. App. Oct. 25, 2005) (automobile negligence action).

Nevertheless, "HIPAA supersedes Michigan law to the extent that [HIPAA's] protections and requirements are more stringent than those provided by state law." *Palazzolo v. Mann*, No. 09-10043, 2009 WL 728527, at *2 (E.D. Mich. Mar. 19, 2009). "Unlike Michigan law, HIPAA does not allow for automatic wavier of the physician-patient privilege upon the filing of a lawsuit, therefore Michigan law is not 'more stringent,' and is superseded by HIPAA." *Congress v. Tillman*, No. 09-10419, 2009 WL 1738511, at *1 (E.D. Mich. June 16, 2009). "Moreover, unlike Michigan law, HIP[A]A does not permit unfettered access to a patient's

---

[3] Plaintiff asserts that the waiver provision of the statute, as written, only applies to a patient's treating physicians *other than those called as witnesses on behalf of the patient*, and only to those physicians *who have treated the patient for the injury at issue*, meaning that information obtained by the treating, testifying physician is still protected by the privilege. (Docket no. 13 at 2, 10-12 (emphasis in original).) Plaintiff, however, provides no legal basis to support her interpretation of the statute, and the Court finds none. Moreover, the Michigan Supreme Court does not make such a distinction. *See Landelius v. Sackellares*, 556 N.W.2d 472, 474 (Mich. 1996) ("Under [MCL § 600.2157], a waiver of the physician-patient privilege is presumed with respect to treating doctors, if the patient brings an action for personal injury or other malpractice and produces another treating physician as a witness.") To the extent that Plaintiff seeks to challenge the interpretation of the statute as written, such a challenge is more appropriately raised at the state level.

medical providers to conduct *ex parte* interviews just because a lawsuit has been filed." *Thomas,* 979 F. Supp. 2d at 783.

HIPAA prohibits the wrongful disclosure of individually identifiable health information, defined as information that relates to the physical or mental health or condition of an individual, or the provision of health care to an individual, that identifies the individual. 42 U.S.C. § 1320d-6; 45 C.F.R. § 160.103. HIPAA sets forth several exceptions to this general rule; in relevant part:

> A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
>> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>>
>> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>>
>>> (A) The covered entity receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>>>
>>> (B) The covered entity receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1). A qualified protective order as defined by HIPAA is a court order or a stipulation by the parties that: (a) prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which it was requested; and (b) requires the return of the protected information to the covered entity or the

destruction of the information at the end of the litigation or proceeding. 45 C.F.R. § 164.512(e)(1)(v).

HIPAA's provisions, however, are silent with regard to *ex parte* interviews with a party's treating physicians. *See Croskey v. BMW of N. Am.*, No. 02-73747, 2005 WL 4704767, at *4 (E.D. Mich. Nov. 10, 2005) ("The problem with [HIPAA] is that it does not explicitly mention *ex parte* interviews."). Nevertheless, this "has not prevented courts from issuing qualified protective orders that allow [*ex parte*] interviews, as long as measures are put in place to allow judicial supervision adequate to ensure that HIPAA's goals are achieved." *Thomas,* 979 F.Supp.2d at 784 (citations omitted). In *Thomas*, District Judge David M. Lawson aptly explained this issue:

> The HIPAA regulations plainly permit adversaries in litigation to have access to a claimant's medical *records* that are relevant to the issues in the litigation. Having access to the medical *witnesses* who may testify at trial serves the same goal of allowing equal access to the evidence, which is essential to the success of the adversary process.

*Id.* In issuing qualified protective orders that permit *ex parte* interviews, some judges in this district have required that the order contain language that provides a "clear and explicit" notice to the medical witness about the purpose of the interview and that the witness is not required to participate in the interview. *See Thomas*, 979 F. Supp. 2d at 785-86, 787; *Croskey*, 2005 WL 4704767, at *5; *Palazzolo*, 2009 WL 728527 at *4. Other courts have restricted or denied the issuance of qualified protective orders that permit *ex parte* interviews where the plaintiff "shows a specific reason for restricting access to his or her treating physicians, such as sensitive medical history irrelevant to the lawsuit. *Thomas*, 979 F. Supp. 2d at 784 (quoting *Pratt v. Petelin*, 09-2252-CM-GLR, 2010 WL 446474, at *7 (D. Kan. Feb. 4, 2010)).

Here, Plaintiff alleges that she is a sixty-year-old woman and that there may be much within her pre- and post-accident medical history that is irrelevant to the instant action. (Docket no. 13 at 6.) Plaintiff, however, does not allege that her records contain any sensitive medical history and does not set forth any other specific reason for restricting access to her treating physicians. Plaintiff does argue, though, that any of Defendants' communications with her treating physicians should be conducted through the formal discovery process via depositions rather than via *ex parte* interviews. (Docket no. 13 at 20.) The Court disagrees. "It is 'routine practice ... to talk with each witness before trial to learn what the witness knows about the case and what testimony the witness is likely to give,' and '[t]here is no justification for requiring costly depositions ... without knowing in advance that the testimony will be useful.'" *Soto v. ABX Air, Inc.*, No. 07-11035, 2010 WL 4539454, at *3 (E.D. Mich. Nov. 3, 2010) (quoting *Domako,* 475 N.W.2d at 35, 36). The Court therefore finds good cause under HIPAA to grant Defendants' Motion for Protective Order to the extent that the proposed order permits disclosure of Plaintiff's protected health information by Plaintiff's treating physicians through either the production of her medical records or *ex parte* interviews.

With regard to the express requirements of a qualified protective order imposed by HIPAA, *supra*, Defendants' proposed qualified protective order addresses both. The second requirement is explicitly and sufficiently stated in the closing lines of the proposed order: "counsel for the Defendants who receives written or otherwise recorded protected health care information of the Plaintiff, . . . , shall destroy or return the information (including all copies made) to the health care provider. (Docket no. 9-4 ¶ 5.) With regard to the first requirement, the proposed order states, "counsel for the Defendants is permitted to use or disclose protected information for all purposes involved in this action, except as limited by the Federal Rules of

8

Civil Procedure for discovery and subject to the Federal Rules of Evidence for use at trial . . . ." (*Id.*) This statement does not encompass the prohibition required by HIPAA; accordingly, the Court will order Defendants to revise their proposed order to state that counsel for Defendants is permitted to use or disclose the protected information for all purposes related to *only* the instant action. Plaintiff argues that Defendants should not be permitted to use or disclose her protected health information for "all purposes" related to this action, but only for purposes justified by Defendants. (Docket no. 13 at 5.) HIPAA does not require a party to justify its use or disclosure of protected information, as long as it is used only for purposes of the action for which it was requested, and the Court declines to impose such a requirement upon Defendants.

Nevertheless, because the Court grants Defendants permission to conduct *ex parte* interviews with Plaintiff's treating physicians, the Court will impose the additional requirement that the qualified protective order contain language that provides a "clear and explicit" notice to the medical witness about the purpose of the interview and that the witness is not required to participate in the interview. Defendants' proposed order sufficiently meets this requirement. (*See* docket no. 9-4 ¶ 3.) The Court is not persuaded by Plaintiff's assertion that Defendants "buried" the notice in the third paragraph of the proposed order "in a manner designed to minimize" the physicians' rights, where the proposed order contains only five paragraphs spanning approximately two pages.

Next, Plaintiff argues that Defendants' proposed qualified protective order, which orders Plaintiff's health care providers to produce copies of Plaintiff's records and permits them to discuss Plaintiff's medical condition with defense counsel, improperly requires Plaintiff's physicians to produce her medical records without an authorization and circumvents the protections afforded to Plaintiff under Federal Rule of Civil Procedure 45, specifically, the

9

requirement that Defendants provide notice to Plaintiff of any subpoena *duces tecum* before it is served. (Docket no. 13 at 3-4.) Plaintiff's argument lacks merit, however, as HIPAA authorizes the disclosure of protected information in a judicial proceeding, *either* in response to a court order *or* in response to a subpoena. 45 C.F.R. § 164.512(e)(1). Accordingly, HIPAA does not require a party to subpoena protected information under Fed. R. Civ. P. 45 before it seeks a qualified protective order. Plaintiff's argument that Defendants' Motion is premature because Defendants have not yet sought Plaintiff's medical records to determine if "secret, private meetings with Plaintiff's physicians" are justified, fails on a similar basis. Nothing in HIPAA's regulations require a party to seek disclosure of a party's medical records before it seeks the disclosure of protected information through other means, namely, *ex parte* interviews. *See id.*

Plaintiff further argues that paragraphs two and four of Defendants' proposed qualified protective order are overbroad in that they permit disclosure of protected information by all of Plaintiff's medical providers, not just those physicians who have treated the injuries at issue. (Docket no. 13 at 4, 10.) Plaintiff claims that such language violates Michigan's statutory physician-patient privilege, MCL § 600.2157. (*Id*. at 4.) Indeed, MCL § 600.2157 provides for a waiver of the privilege as to "physician[s] who ha[ve] treated the patient for the injuries, disease, or condition." The waiver does not apply to medical providers who are not "duly authorized to practice medicine or surgery." *People v. Lobaito*, 351 N.W.2d 233, 241 (Mich. Ct. App. 1984) (child psychologist); *People v. Baker*, 288 N.W.2d 430, 431 (Mich. Ct. App. 1979) (optometrist). Conversely, HIPAA permits the disclosure of protected information by a covered entity, which is defined under the regulations as a health plan, a health care clearinghouse, or a health care provider who transmits any health information in electronic form. 45 C.F.R. §§ 164.512(e)(1), 160.103. In this instance, Michigan's statutory physician-patient privilege is

more stringent than HIPAA in providing greater protection to Plaintiff, and it should be applied. Accordingly, the Court will order Defendants to revise their proposed qualified protective order to authorize disclosure of Plaintiff's protected health information only from Plaintiff's physicians who have treated Plaintiff for the injury or condition at issue.

As an ancillary argument, Plaintiff asserts that the order should further be limited to only the treating physicians who have treated Plaintiff for the injuries that she sustained to her right hip, right knee, and left index finger in the fall. (Docket no. 13 at 4, 7, 8.) But Plaintiff has also alleged that she suffers from pain, humiliation, embarrassment, mental anguish, gross indignity, and inconvenience as well as aggravation or activation of a pre-existing condition. (Docket no. 1-2 ¶ 12.) Accordingly, the Court will not impose Plaintiff's suggested limitation.

Finally, Plaintiff argues that the *ex parte* interviews should be limited to oral, not written, communications with Defendants' counsel only. (Docket no. 13 at 5, 7.) The Court is not persuaded by Plaintiff's arguments. First, Plaintiff provides no legal basis for limiting the *ex parte* interviews to oral communications, and her argument is inapposite to the process of informal discovery. *See Thomas*, 979 F.Supp.2d at 786 ([A] normal component of informal discovery is the attempt to obtain a written statement from the witness, which can serve a multitude of purposes later at trial.") Second, the Court finds that the proposed order's language limiting the *ex parte* interviews to "attorneys for Defendant and/or Defendant's agents" to be sufficient to protect Plaintiff's health information; notably, the qualified protective orders entered by other courts in this district have similar provisions allowing for *ex parte* interviews to be conducted by Defendants' attorneys and/or agents. *See Christian v. Mallett*, No. 11-cv-12316, ECF no. 7 (E.D. Mich. 2011); *Palazzolo*, No. 09-cv-10043, ECF no. 20 (E.D. Mich. 2009);

11

*Croskey*, No. 02-cv-73747, ECF no. 190 (E.D. Mich. 2005). Therefore, the Court will decline to limit Defendants' interviews to oral communications with Defendants' counsel only.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Qualified Protective Order and Authorization Pursuant to Health Insurance Portability and Accountability Act (HIPAA) [9] is **GRANTED IN PART**. Defendants will revise their proposed qualified protective order as follows and submit it to the Court for entry within seven (7) days of this Opinion and Order:

a. Defendants will revise their proposed qualified protective order to include an explicit statement that Defendants are prohibited from using or disclosing any of Plaintiff's protected health information for any purpose other than this action; and

b. Defendants will revise their proposed qualified protective order to authorize disclosure of Plaintiff's protected health information from only Plaintiff's physicians who have treated Plaintiff for the injury or condition at issue.

### NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: September 22, 2016      s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Opinion and Order was served on counsel of record on this date.

Dated: September 22, 2016        s/ Lisa C. Bartlett
                                           Case Manager