UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENATA PETERSON,

        Plaintiff,                          Civil Case No. 15-13980
                                                   Honorable Linda V. Parker

v.

OUTBACK STEAKHOUSE
OF FLORIDA, LLC,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 50)

Plaintiff Renata Peterson commenced this premises liability action in Michigan state court against Defendants Outback Steakhouse, Inc. and Bloomin' Brands, Inc. on October 8, 2015. Presently before the Court is Defendant Outback Steakhouse of Florida, LLC's Motion for Summary Judgment, filed March 21, 2018. (ECF No. 50.) The motion has been fully briefed. Finding the legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral arguments pursuant to L.R. 7.1(f)(2). For the reasons that follow, the Court grants Defendant's motion.

I.     **Factual and Procedural History**

On May 30, 2014, Plaintiff and her family dined at Outback Steakhouse in Shelby Township, MI. (ECF No. 51 at Pg ID 1057.) They arrived sometime

1

around dusk and dined for two to three hours. (ECF No. 50 at Pg ID 1029, Exh. F, Mack Peterson, Jr. Dep. Tr. 15:2-6 (July 10, 2017).) Plaintiff exited the restaurant approximately around 10:30 p.m. with her son, Mack Peterson III, and grandson, Mack Peterson, IV, while her husband, Mack Peterson, Jr. used the facilities. (ECF No. 51 at Pg ID 1057.) Plaintiff's son testified that he was carrying his son and walking in front of Plaintiff. (ECF No. 50, Ex. H, Mack Peterson, III, Dep. Tr. 16:23-17:8 (July 10, 2017).) As she was returning to her vehicle, Plaintiff slipped and fell in the parking lot owned and operated by Defendant. (ECF No. 42 at Pg ID 1001.) According to Plaintiff, grease had accumulated next to an underground grease trap system, which caused her to fall and suffer severe injuries. (*Id.*) Plaintiff testified that she did not see the grease prior to her fall, and she did not see the grease when she entered the restaurant. (ECF No. 50, Ex. A, Renata Peterson Dep. Tr. 47:16-23 (May 2, 2017).) However, Plaintiff testified that she walked a different path when she exited the restaurant. (ECF No. 50, Ex. A, Renata Peterson Dep. Tr. 48:2-4.)

Shortly thereafter, Plaintiff's husband exited the restaurant and witnessed Plaintiff on the ground. (ECF No. 50, Ex. F, Mack Peterson, Jr. Dep. Tr. 17:12-18:16.) After helping Plaintiff up and showing her to a nearby bench, Plaintiff's husband went inside the restaurant to inform the manager of the incident in the parking lot. (ECF No. 50, Ex. F, Mack Peterson Jr. Dep Tr. 19:3-8, 21:5-11).)

Arturo Word, the manager on duty, testified that there was grease in the parking lot where Plaintiff had fallen, which was located near the underground grease trap system. (ECF No. 50, Ex. J, Arturo Word Dep. Tr. 45:18-23 (Jun. 16, 2017).) Mr. Word testified that, once outside, he immediately noticed the grease without anyone pointing it out to him. (ECF No. 50, Ex. J, Word Dep. Tr. 44:24-45:2; 45:15-17.)

According to Larry LaFray, managing partner of Outback Steakhouse of Florida, LLC, the grease trap system works in conjunction with the plumbing system. (ECF No. 50, Exh. C, Larry LaFray Dep. Tr. 9:6-10:19 (Jun. 16, 2017).) Its purpose is to prevent food debris and grease from entering the sewer system. (*Id.* at. 10:25-11:1.) On a monthly basis, a third-party contractor, Dover Grease, services the trap system and removes the accumulated grease. (*Id.* at 11:5-20.) Mr. LaFray testified that the grease overflow was a result of two pump failures in the grease trap system. (*Id.* at 22:2-3.)

Mr. Word testified that included in the manager's daily opening checklist is an inspection of the parking lot, but it is discarded daily. (ECF No. 50, Ex. J, Word Dep. Tr. 30:23-31:23.) Additionally, throughout the day as shifts change, employees scan the parking lot for any unsafe conditions. (*Id.*) There was no testimony that anyone had seen grease in the parking lot prior to Plaintiff's fall, as well as to how long the grease had been in the parking lot prior to Plaintiff's fall.

3

Following this incident, Plaintiff filed suit in the Circuit Court for the County of Macomb on October 8, 2015. (ECF No. 1 at Pg ID 2.) Defendants filed a Notice of Removal to this Court on November 12, 2015. On August 16, 2017, Defendants filed a motion for summary judgment, arguing (1) Defendants did not have actual or constructive notice of the alleged condition of the parking lot; (2) the alleged condition of the parking lot was open and obvious; (3) Defendant Outback Steakhouse, Inc. is not an entity, and therefore, is an improper party; and (4) Defendant Bloomin' Brands did not have possession and control of the parking lot. (ECF No. 32.) In an Opinion and Order dated January 11, 2018, this Court, granted, in part, Defendants' motion for summary judgment and dismissed Bloomin' Brands, Inc. (ECF No. 40.) In a separate Opinion and Order dated January 11, 2018, this Court granted Plaintiff's motion to amend the complaint to name the proper party, Outback Steakhouse of Florida, LLC, and dismissed Outback Steakhouse, Inc. (ECF No. 41.)

On March 21, 2018, Defendant filed the instant motion, arguing that Defendant did not have actual or constructive notice of the alleged condition in the parking lot and that the condition was open and obvious. (ECF No. 50.)

## II. Standard of Review

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material

4

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials."

Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## III. Applicable Law & Analysis

The duty that a possessor of land owes to another person who is on the land depends on the latter person's status." *Hampton v. Waste Mgmt. of Mich., Inc.*, 601 N.W.2d 172, 175 (1999). The parties agree that Plaintiff was lawfully on Defendant's premises as an invitee at the time of the incident. (*See* ECF No. 50 at Pg ID 1037; ECF No. 51 at Pg ID 1059.)

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 386 (Mich. 2001). This duty arises where there is "an unreasonable risk of harm caused by a dangerous condition of the land that the landowner knows or should know the invitees will not discover, realize, or protect themselves against." *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 186 (Mich. 1995) (internal quotation marks and citation omitted). In order to hold a landowner liable, plaintiff must show defendant had actual or constructive notice of the condition of the land. *Lowrey v. LMPS & LMPJ, Inc.*, 500 Mich. 1, 8 (2016); *see also Berryman v. K Mart Corp.*, 193 Mich. App. 88, 92 (Mich. Ct. App. 1992). To have constructive

6

notice, the condition must be of a character or have existed for a sufficient length of time so that the landowner should have had notice of the condition. *Lowrey*, 500 Mich. at 11; *see also Banks v. Exxon Mobil Corp.*, 477 Mich. 983, 983 (2007).

Defendant contends that there is no evidence that it had notice of grease in the parking lot. Further, Defendant argues that there was no testimony that grease was seen prior to Plaintiff entering the restaurant, or any reports of anyone seeing any grease in the parking lot prior to Plaintiff's fall. Moreover, Mr. Word testified that the parking lot is inspected daily and as the employees begin each shift.

To the contrary, and without providing any factual basis, Plaintiff contends Defendant had constructive notice of the condition of the parking lot. Plaintiff erroneously relies on *Grandberry-Lovette v. Garascia*, 303 Mich. App. 566 (Mich. Ct. App. 2014), arguing that Defendant had a continuing duty to inspect the parking lot. (ECF No. 51 at Pg ID 1066.) Further relying on *Grandberry-Lovette*, Plaintiff contends that "the premises possessor must show that the type of inspection that a reasonable prudent premises possessor would have undertaken under the same circumstances would not have revealed the dangerous condition at issue." (*Id.*) Plaintiff argues that "if under the totality of circumstances a reasonable prudent premises possessor would have employed a more vigorous inspection regime that would have revealed the dangerous condition, the fact that the condition was not observable on casual inspection would not preclude a jury

7

from finding that the premises possessor should have discovered the hazard . . . ." (*Id.*)

However, the Michigan Supreme Court held in *Lowrey* that *Grandberry-Lovette* was wrongfully decided on the exact issues upon which Plaintiff relies. *Lowrey*, 500 Mich. at 8. The Michigan Supreme Court stated that defendant is required to do no more than show plaintiff's evidence is insufficient—a defendant has no obligation to prove it does not have notice. *Id.* at 9. Further, defendant is not required to "present evidence of a routine or reasonable inspection . . . to prove a premise's owner lack of constructive notice of a dangerous condition on the property." *Id.* at 10. All a defendant need do is "demonstrat[e] that plaintiff failed to present sufficient evidence of notice." *Id.* This is what Defendant has done here.

As relates to actual notice, Plaintiff has presented no evidence that she or any member of her family saw the grease prior to her fall, including her son, who testified that he walked ahead of Plaintiff. Further, Mr. Word testified that there were no other incidents or reports of falls or grease in the parking lot. To the extent anyone saw grease, it was after Plaintiff's fall, which would have been readily apparent because Plaintiff's fall would have drawn attention to the location and presence of the grease.

Likewise, Plaintiff failed to present any evidence that Defendant had constructive notice of the condition by demonstrating that the hazard had existed for a sufficient time such that Defendant would have discovered it. There is no evidence of how long the grease had been in the parking lot, whether it was there for an unreasonable amount of time, or for mere seconds. Although Plaintiff need not have personal knowledge of how long the grease was in the parking lot, she must show "affirmative evidence that points to the condition having existed for more than mere seconds." *Guthrev v. Lowe's Home Ctrs., Inc.*, 204 F. App'x 524, 527 (6th Cir. 2006). Along those same lines, Plaintiff has not produced any evidence that the grease was of such a character that Defendant should have had notice.

As to the open and obvious doctrine, Defendant argues that the grease in the parking lot was open and obvious for four reasons: (1) the grease was visible as shown in the photograph provided by Plaintiff; (2) Plaintiff testified that she saw the grease after she fell; (3) Plaintiff's husband and son saw the grease after the incident; and (4) Mr. Word testified that he saw the grease when he came outside prior to anyone pointing it out. (ECF No. 50 at Pg ID 1047.) Further, Defendant argues that there were no special aspects that would render the condition of the parking lot unreasonably dangerous despite its open and obvious nature. (*Id.*)

The Court declines to discuss the open and obvious doctrine because Plaintiff has failed to show Defendant had notice of the condition of the parking lot. *See Lowrey*, 500 Mich. at 8 (stating that in order to hold a landowner liable, plaintiff must show defendant had actual or constructive notice of the condition of the land).

Accordingly, viewing the evidence in the light most favorable to Plaintiff, Defendant is entitled to judgment as a matter of law as Plaintiff has failed to prove Defendant had notice of the grease in the parking lot.

## IV. Conclusion

For the reasons above, the Court grants Defendant's motion.

Accordingly,

**IT IS ORDERED** that Defendants' motion (ECF No. 50) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: November 27, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, November 27, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager